UNITED STATED DISTRICT COUNT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VICTOR CINELLI, on behalf of himself and
all others similarly situated,

       Plaintiffs,     MEMORANDUM OPINION
                 AND ORDER

                 CV 04-3809 (ETB)

   -against-

MCS CLAIM SERVICES, INC.,

       Defendant.
------------------------------------------------------------------X

APPEARANCES:

Joseph Mauro
The Law Office of Joseph Mauro, LLC
631 Montauk Hwy, Suite 6
West Islip, NY 11795
for plaintiffs

Brian L. Bromberg, P.C.
40 Exchange Place, Suite 604
New York, NY 10005
for plaintiffs

Peter David Rigelhaupt
L'Abbate, Balkan, Colavita, & Contini, LLP
1050 Franklin Avenue
Garden City, NY 11530
for defendant

  Plaintiffs bring this class action against defendant, MCS Claim Services, Inc. ("MCS") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. After a period of productive negotiations in this action, the parties agreed to settle, which settlement is presently before the Court. The defendant has agreed to (1) pay $5,000.00 to the

1

settlement class, plus the costs of notice and distribution; (2) pay $1,000.00 to the class representative Victor Cinelli ("Cinelli") for statutory damages and his role in this litigation; and (3) make a separate payment of $12,500.00 to class counsel for fees and costs. In return, the class promises to release the defendant from the claims in this case.

I.  BACKGROUND

In a complaint filed on September 2, 2004, the named plaintiff, Victor Cinelli ("Cinelli"), asserted claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. The allegations arise from the defendant's attempt to collect alleged debts from New York consumers. (Am. Compl. ¶ 9.) In an effort to collect debt from Cinelli on behalf of New Island Hospital, MCS sent Cinelli a form letter, dated December 12, 2003, which constituted the first and initial communication from MCS to Cinelli regarding the debt. (Id. ¶¶ 12-13.) Plaintiffs allege that the form letter was sent 2,112 class member consumers in New York. (See id.) Plaintiffs allege that the letter violated Section 1692g of the FDCPA in that it failed to specify that if a consumer disputes the debt, the consumer must notify the debt collector in writing. (Id. ¶ 32.) Plaintiffs allege that by failing to specify that any dispute must be communicated in writing, the defendant attempted to lull consumers into believing that oral notification of a dispute was sufficient to preserve their rights under the statute. (Id. ¶ 33.) Plaintiffs also allege that defendant violated Section 1692g by failing to specify that a request for the name and the address of the original creditor must be in writing. (Id. ¶ 34.)

On October 18, 2005, the parties entered into a preliminary Class Action Settlement Agreement and Release ("Settlement Agreement"), which I approved on November 9, 2005. (See Order Preliminarily Approving Class Action Settlement by the undersigned, dated

2

November 9, 2005 ("November 9, 2006 Order").) The parties stipulate that the settlement class in this action shall consist of "all consumers in the State of New York who, according to Defendant's records: (a) from September 1, 2003 through September 2, 2004; (b) were sent collection letters bearing Defendant's letterhead in a form materially identical or substantially similar to the letter sent to plaintiff Victor Cinelli on or about December 12, 2003; and (c) which were not returned by the postal service as undelivered." (November 9, 2006 Order at 1; Settlement Agreement ¶ 7.) The parties stipulate that the defendant will establish a fund totaling $6,000. (November 9, 2006 Order at 1-2; Settlement Agreement ¶ 30.) Out of the fund, $1,000 will be paid to Cinelli, as the class representative, and the balance of the $5,000 will be divided on a pro rata basis among class members who timely submit a claim form. (November 9, 2006 Order at 1-2; Settlement Agreement ¶ 30.) The stipulation provided that notice would be mailed by First Class, Inc., a third-party notice company, to all class members whose addresses have been identified. (Settlement Agreement ¶ 39.) In the notice, the class members were informed of the status of the case and their rights. (See Notice.) The Notice set forth generally the terms of the Stipulation of Settlement, and announced preliminary approval of the settlement, pending further consideration at the Fairness Hearing scheduled for April 3, 2006. (Id.) The Notice directed any class members who might object to the settlement to contact the parties' attorneys on or before February 15, 2005, and to appear at the Fairness Hearing. (November 9, 2006 Order at 2-3.)

At the Fairness Hearing on April 3, 2006, the Court was informed by both parties' counsel that no opposition to the settlement had been received. Plaintiffs' counsel submitted an affidavit of Michael Caines, Chief Executive Officer of First Class, Inc. (the third-party notice

company), stating that on December 7, 2005, notice was mailed to 2,112 class members via first class mail with "Forwarding Service Requested." (Affidavit of Michael Caines, dated April 3, 2006 ("Caines Aff.") ¶ 4.) Caines stated in his affidavit that as of March 29, 2006, a total of 61 on-time claim forms and one late claim form were received (which the parties have agreed to accept), and that as of March 22, 2006, no requests for exclusion or objections were received. (Id. ¶¶ 9-11.) Accordingly, the Settlement Agreement is considered without objection.

II.        DISCUSSION

   A.    The Settlement

Rule 23(e) of the Federal Rules of Civil Procedure requires Court approval for any settlement of a class action. Rule 23(e), Fed. R. Civ. P. A court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." Wal-Mart Stores, Inc., et al. v. Visa, U.S.A, Inc., et al., 396 F.3d 96, 116 (2d Cir. 2005) (citing Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)). The trial court is granted the discretion to grant or deny the settlement, taking into consideration the general judicial policy in favor of settlements. Wal-Mart Stores, 396 F.3d 96 at 116 (citing In re Paine Webber Ltd. P'ships Litig., 147 F.3d 132, 138 (2d Cir. 1998)).

In order to evaluate the fairness of a class action settlement, the court should examine the negotiations that led to the settlement, and the substantive terms of the settlement. In re Visa Check/Mastermoney Antitrust Litigation, 297 F. Supp. 2d 503, 509-10 (E.D.N.Y. 2003) (citing In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000)). At the Fairness Hearing, counsel for both parties stated that a productive negotiation process led to the settlement in this case, by which plaintiffs' counsel achieved the maximum recovery for the

4

class. The Court is satisfied that the proposed settlement is the product of good faith arms-length negotiations between the parties, untainted by any specter of collusion.

When reviewing the substantive terms of a class settlement, the district courts in this Circuit are directed to apply the "Grinnell factors." Wal-Mart Stores, Inc., 396 F.3d 96 at 117 (citing Joel A., 218 F.3d at 138). The Grinnell factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Wal-Mart Stores, Inc., 396 F.3d 96 at 117 (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 454 (2d Cir. 1974)).

1. The Complexity, Expense, and Likely Duration of the Litigation

The factual and legal issues in this case are moderately complex, and given the complexity of any class action lawsuit, it is reasonable to assume that continued litigation would have required extensive time and expense.

2. The Reaction of the Class to the Settlement

As counsel for both parties stated at the Fairness Hearing, no objections to the settlement have been filed by any class members. As described supra, adequate notice of the proposed settlement was provided to the class members. The notice was widely disseminated with clear instructions as to how to submit comments, and with an adequate period of time for such comments to be submitted. The absence of any opposition weighs in favor of settlement.

Ross v. A.H. Robins Co., Inc., 700 F. Supp. 682, 684 (S.D.N.Y. 1988) (citations omitted) ("[T]he absence of objectants may itself be taken as evidencing the fairness of the settlement.").

        3.      <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

The Court's interest in analyzing this factor is to determine whether the parties had ample information to make informed decisions as to the terms of the Stipulation of Settlement. Marisol A. v. Giuliani, 185 F.R.D. 152, 163 (S.D.N.Y. 1999), aff'd. sub nom. Joel A. v. Giuliani, 218 F.3d 132 (2d Cir. 2000). Here, based on representations made by counsel at the Fairness Hearing, the Court is satisfied that the parties entered into settlement discussions with ample information as to what a trial would entail.

        4.      <u>The Risks of Class Prevailing (Establishing Liability, Establishing Damages, Maintaining the Class through Trial</u>)

In analyzing the parties' risks of establishing liability, the Court does not "[need to] decide the merits of the case or resolve unsettled legal questions." Marisol A., 185 F.R.D. at 164 (citing Carson v. American Brands, Inc., 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). Instead, the Court must weigh the likelihood of success by the plaintiffs against the relief offered by the settlement. Marisol A., 185 F.R.D. at 164. The Court finds that even assuming plaintiffs had a strong chance of success at trial with respect to liability, the relief granted to the plaintiffs by the Settlement Agreement is sufficiently favorable to weigh in favor of the approval of the Settlement Agreement.

With respect to damages, the relief provided for in the Settlement Agreement meets plaintiffs' expectations. The settlement provides for the maximum recovery the plaintiffs could have achieved under the statute– $5,000, or ten percent of the defendant's net worth.

Another factor, the risks of maintaining the class through trial, is a minor consideration in

6

this case.  It is unlikely that defendant would have moved to defeat the class, and had defendant made such motion, it likely would have failed.  The last two Grinnell factors, the ability of the defendant to withstand a greater judgment, and the range of reasonableness of the settlement fund, weigh in favor of the settlement.  The settlement fund is reasonable given, as noted, that it represents the maximum recovery plaintiffs are entitled to based on the defendant's net worth.

Upon full review, the Court finds that consideration of the Grinnell factors discussed supra, in addition to the statements made by the parties' counsel at the Fairness Hearing, weigh in favor of approving the Settlement Agreement.

B. Attorneys' Fees

Plaintiffs' counsel request $12,500.00 in attorneys' fees in this case.  Plaintiffs' counsel of record in this action, Joseph M. Mauro ("Mr. Mauro"), and Brian L. Bromberg ("Mr. Bromberg"), have each submitted affidavits attesting to their experience in this field of law, their billing rates, and the number of hours they spent on the case. Mr. Mauro states in his affidavit that he expended 7.5 hours of time at a billing rate of $250.00 per hour, for a total of $1,875.00 in time, together with costs in the amount of $185.00.  (Certification under 28 U.S.C. § 1746 of Plaintiff's Attorney Joseph M. Mauro ("Mauro Aff.") ¶ 4.)  Mr. Bromberg states in his affidavit that he expended 22.80 hours of time at a billing rate of $300.00 an hour, for a total of $6,840.00, together with costs in the amount of $38.29.  (Certification under 28 U.S.C. § 1746 of Plaintiff's Attorney Brian L. Bromberg ("Bromberg Aff.") ¶ 11.)  Mr. Bromberg further states that his paralegal, Nicholas Job, expended 2.0 hours of time at a billing rate of $65.00 an hour for a total of $130.00.  Based on these submissions, I find the requested total amount of $9,068.29 in fees and costs to be reasonable.  See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d

7

Cir. 2000) (noting that the district court has broad discretion to award reasonable attorney's fees). I further find the request for an additional $1,500 in anticipated fees and costs spent administering the settlement to be reasonable.

A third attorney, Lance A. Raphael ("Mr. Raphael"), of The Consumer Advocacy Center, P.C. in Chicago, Illinois, with whom plaintiffs' counsel of record have apparently entered a fee-sharing arrangement, also submitted a certification for attorneys' fees in this action. Mr. Raphael states in his affidavit that his office has spent 17.4 hours of time on this case, for a total of $3,102.00. (Certification for Attorneys' Fees Under 28 § 1746 ("Raphael Aff.") ¶ 15.) Mr. Raphael arrived at his calculation based on the sum of the work he performed at an hourly rate of $410.00 per hour, plus the work his partner Stacy M. Bardo performed at $210.00 per hour, plus the work paralegals performed at $90.00 per hour. (Id. ¶¶ 13-14.)

"A party seeking attorneys fees bears the burden of documenting and proving entitlement to specific fees." Torf v. Metromedia Paging Services, Inc., Civ. 93-4031, 1996 WL 118559, at *4 (E.D.N.Y. March 5, 1996). To meet that burden, "the claimant must provide contemporaneous time records that account for how counsel's time was spent, and should list '"the date, the concise description of the work product, and the amount of time expended."'" Torf, 1996 WL 118559, at *4 (quoting Loper v. New York City Police Dept., 853 F. Supp. 716 (S.D.N.Y. 1994); see also New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 48 (2d Cir. 1983) ("Hereafter, any attorney. . . who applies for court-ordered compensation in this Circuit for work done after [June 15, 1983] must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.").

Here, Mr. Raphael does not explain, even generally, the nature of the work his office performed in this case. Nor does he breakdown the number of hours spent by the persons assigned to this case. He states only that "[b]ased upon the billing records of the Consumer Advocacy Center, P.C., our office has spent over 17.4 hours of time, or $3,102.00 in fees." Mr. Raphael's failure to detail the nature of the work he performed and submit contemporaneous time records provides the Court with no basis with which to assess his application. City of Detroit v. Grinnell Corp., (Grinnell I), 495 F.2d 448, 473 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 1974) (noting that "without some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations. . . the court cannot know the nature of the services for which compensation is sought."). Mr. Raphael has failed to meet his burden of documenting and proving his entitlement to the fees he requested, and accordingly, his application his denied. Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C., CV 96-4489, 2000 WL 130637, at *3 (E.D.N.Y. Feb. 4, 2000) (noting that the court "should deny and not consider any portion of an application for attorneys' fees not supported by specific time records."); Torf, 1996 WL 118559, at *4 (denying request for attorney's fees where attorney failed to provide the specific nature of the work done, a concise description of the work product, and the hours expended for each task).

## CONCLUSION

For the foregoing reasons, the Settlement Agreement is approved, and the action is deemed, for purposes of settlement only, to be certified as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. Mr. Bromberg is awarded $7,008.29 in fees and costs, Mr.

9

Mauro is awarded $2,060.00 in fees and costs, and $1,500 in fees and costs is awarded to plaintiffs' counsel for the anticipated cost of administering the settlement, for a total award of $10,568.29.  Mr. Raphael's request for fees and costs is denied.

SO ORDERED:

Dated: Central Islip, New York
      May 23, 2006

                                          /s/ E. Thomas Boyle
                                          E. THOMAS BOYLE
                                          United States Magistrate Judge